IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID SAXTON, | : | |
|     Plaintiff | : | CIVIL ACTION |
| | : | |
|     v. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | No. 08-3303 |
| Commissioner of the | : | |
| Social Security Administration, | : | |
|     Defendant | : | |

**REPORT AND RECOMMENDATION**

TIMOTHY R. RICE                                                                                    April 3, 2009
U.S. MAGISTRATE JUDGE

Resolution of this case rests on the sufficiency of evidence supporting a finding of the

Administrative Law Judge ("ALJ") that David Saxton's mental impairments were non-severe.

Because the evidence supporting Saxton's mental impairments met the de minimis level required

for a finding of severe impairment, the ALJ's decision was not supported by substantial evidence.

Newell v. Commissioner, 347 F.3d 541, 546-47 (3d Cir. 2003), and I recommend the case be

remanded.

Saxton seeks judicial review of the ALJ's decision denying his claim for Supplemental

Security Income ("SSI").  Saxton claims he is disabled due to chronic obstructive pulmonary

disease ("COPD"),[1] degenerative disc disease,[2] arthritis of the left shoulder, neuropathy[3] of the

left leg, obesity, borderline intelligence, major depression, and diabetes.  See Plaintiff's Brief and

Statement of Issues in Support of Request for Review and Motion for Summary Judgment at 2,

Saxton v. Astrue, No. 08-3303 (E.D. Pa. filed Oct. 15, 2008) [hereinafter Plaintiff's Brief].

Saxton's request for review alleges: (1) the ALJ did not support her finding Saxton had

the residual functional capacity ("RFC")[4] to perform a range of light work, with some

environmental restrictions, with substantial evidence; (2) the ALJ did not support her finding

Saxton's depression was non-severe with substantial evidence; (3) the ALJ improperly relied on

the vocational expert's testimony because the hypothetical did not include Saxton's mental

limitations; and (4) the ALJ improperly relied on the vocational expert's testimony because the

hypothetical did not include Saxton's manipulative limitations.  See Plaintiff's Brief at 3-11.

After careful review, I find the ALJ's decision not supported by substantial evidence.

Accordingly, I respectfully recommend Saxton's request for review be GRANTED and the

matter be REMANDED for further review consistent with this report and recommendation.

---

[1]  COPD is a disorder characterized by persistent or recurring obstruction of air flow.
Dorland's Illustrated Medical Dictionary 538 (31st ed. 2007) [hereinafter Dorland's].

[2]  Degenerative disc disease is increasing stiffness and rigidness of spinal discs, often
caused by aging.  See Degenerative Disc Disease Condition Center, available at
http://www.spineuniverse.com/degenerative-disc-disease/condition-center/.

[3]  A neuropathy is a functional disturbance or pathological change in the peripheral
nervous system.  Dorland's at 1287.

[4]  Saxton's RFC reflects "the most [he] can still do [in a work setting] despite [his]
limitations."  20 C.F.R. § 416.945(a).

BACKGROUND

On February 23, 2006, Saxton applied for SSI, alleging disability as of June 1, 1992.  R. at 17.  His application was initially denied on September 21, 2006.  R. at 17, 50.  Following a timely request for a hearing, R. at 56, the ALJ heard testimony from Saxton and vocational expert Dr. Carolyn Rutherford on February 21, 2008.  R. at 28.  On March 28, 2008, the ALJ denied Saxton's claims.  R. at 14.

The ALJ applied the five-step sequential analysis[5] to decide Saxton's disability claim.  R. at 17-25.  At step one, the ALJ found Saxton had not engaged in substantial gainful activity at any relevant time.  R. at 19.  At step two, the ALJ found Saxton suffered from the following

---

[5] The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified at 20 C.F.R. § 416.920.  These steps are summarized as follows:

Step One:  If the claimant is working and the work is substantial gainful activity, a finding of not disabled is directed.  If not, proceed to Step Two.  20 C.F.R. § 416.920(a)(4)(I).

Step Two:  If the claimant is found not to have a severe impairment, or severe combination of impairments, which significantly limits his or her physical or mental ability to do basic work activity, a finding of not disabled is directed.  If there is a severe impairment, proceed to Step Three.  20 C.F.R. § 416.920(a)(4)(ii).

Step Three:  If the impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  If not, proceed to Step Four.  20 C.F.R. § 416.920(a)(4)(iii).

Step Four:  If the claimant retains residual functional capacity to perform past relevant work, a finding of not disabled is directed.  If it is determined that the claimant cannot do the kind of work he or she performed in the past, proceed to Step Five.  20 C.F.R. § 416.920(a)(4)(iv).

Step Five: The Commissioner will then consider the claimant's residual functional capacity, age, education, and past work experience in conjunction with the criteria listed in Appendix 2 to determine if the claimant can adjust to other work or is disabled.  20 C.F.R. § 416.920 (a)(4)(v).

severe impairments: diabetes, emphysema,[6] and mild arthritis of the left shoulder.  R. at 19.  The

ALJ also found Saxton's medically determinable mental impairments caused no more than mild

limitations, making them non-severe.  R. at 19, 21.  At step three, the ALJ found Saxton's

impairments or combination of impairments did not meet or medically equal one of the Listed

Impairments.  R. at 21.  At step four, the ALJ found Saxton had the RFC to perform light work[7]

in a clean and temperate environment.  R. at 21.  After finding Saxton had no prior relevant work

and considering Saxton's age, education, work experience, and RFC, the ALJ identified jobs

existing in significant numbers in the national economy Saxton could perform, including

assembler, packer, and waiter.  R. at 24, 25.

### FACTUAL HISTORY

Saxton was 51 years old at the time of the ALJ's decision,[8] and had completed the ninth

grade.  R. at 84, 101.  The last job Saxton held was as a school bus driver from 1985 to 1991.  R.

---

[6] Emphysema is an accumulation of air in tissues or organs such as the lungs.  Dorland's at 617.

[7] Light work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  20 C.F.R. § 416.967(b)

[8] Saxton is considered an "individual closely approaching advanced age" under the Commissioner's regulations, which defines such an individual as a person between the ages of 50 and 54.  See 20 C.F.R. § 416.963(d).  Age is considered one of the relevant factors in determining whether a claimant can adjust to other work in the national economy.  Advancing age is "an increasingly limiting factor in a [claimant's] ability to make such an adjustment," 20 C.F.R. § 416.963(a); if an individual is closely approaching advanced age, his or her age, combined with a severe impairment and limited work experience may seriously affect his or her ability to adjust to other work.  20 C.F.R. § 416.963(d).

at 92, 172.  Saxton lives with his fiancée and her daughter.  R. at 35.

Saxton alleges he suffers from major depression and borderline intelligence.  See Plaintiff's Brief at 2.  Dr. Mark Adlen, Saxton's primary care physician, often wrote "anxiety" or "depression" under the "Diagnosis & Problem List" section of the form he completed while treating Saxton between February 2004 and July 2007.  R. at 188-189, 191, 226, 228, 230.  Additionally, Dr. Adlen prescribed Seroquel, an anti-psychotic medication, for Saxton.  R. at 186, 189, 191, 226.  In a June 5, 2006 letter regarding Saxton's inability to work, Dr. Adlen observed Saxton suffered from "psychotic problems," but did not elaborate.  R. at 223.

On May 5, 2006, Dr. Ronald Karpf, an examining psychologist for the Pennsylvania Bureau of Disability, completed a Mental Status Examination of Saxton.  R. at 150.  Dr. Karpf determined Saxton suffered from: (1) marked impairment of ability to understand, remember and carry out detailed instructions; (2) moderate impairment of ability to make judgments on simple work-related decisions; (3) marked impairment of ability to respond appropriately to work pressures in a usual work setting; and (4) slight to no impairment of ability in all other categories. R. at 155.  Although Dr. Karpf noted Saxton was "not cooperative throughout much of the examination" and "acted like he just did not know the answer and did not want to answer," he rated Saxton's reliability and veracity as average.  R. at 150-152.  Dr. Karpf determined Saxton's current body language was inconsistent with depression despite Saxton's reported suicidal thoughts.  R. at 152.  Dr. Karpf also concluded Saxton had no problems with hallucinations or illusions, and showed a full range of affect with normal intensity and appropriate thought

content.  Id.  Dr. Karpf found Saxton's IQ was in the borderline range,[9] and he suffered from depression and anxiety.  R. at 154.  Although Dr. Karpf concluded Saxton's social and occupational limitations were due more to physical status than mental status, he diagnosed Saxton with marked and moderate mental impairments in several categories.  Id.

On May 22, 2006, Dr. Helen Parshall conducted an additional psychiatric review of Saxton for the Social Security Administration.  R. at 157.  Dr. Parshall reviewed Saxton's medical records, but did not interview Saxton.  Id.  Dr. Parshall determined that due to the lack of medical records concerning Saxton's mental disabilities and Saxton's lack of cooperation in the examination, Dr. Karpf overestimated the severity of Saxton's functional restrictions.  R. at 169.  Dr. Parshall concluded Saxton's limitations were due to his physical impairments, and his mental impairments were not severe.[10]  Id.

DISCUSSION

I.      Legal Standard

I must determine whether substantial evidence supports the Commissioner's final decision.  42 U.S.C. § 405(g); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); Rutherford, 399 F.3d at 552.

---

[9] As calculated by Saxton's ability to multiply numbers and count backwards by 3's and 2's.  R. at 153.

[10] Because I recommend remand due to the ALJ's failure to support her finding Saxton's mental impairments were non-severe with substantial evidence, I will not discuss the medical evidence of Saxton's physical impairments.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." Richardson, 402 U.S. at 401 (quoting Consol. Edison Co. v. NLRB, 305

U.S. 197, 229 (1938)); Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003). It is "more than a

mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford, 399

F.3d at 552. I may not weigh the evidence or substitute my own conclusions for that of the ALJ.

Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002) (citing Williams v. Sullivan, 970 F.2d 1178,

1182 (3d. Cir. 1992)). If the ALJ's findings of fact are supported by substantial evidence, I am

"bound by those findings, even if [I] would have decided the factual inquiry differently."

Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). At the same time, however, I must remain

mindful that "leniency [should] be shown in establishing claimant's disability." Reefer, 326 F.3d

at 379 (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979) (alteration in

original)).

In addition, I retain "plenary review over the ALJ's applications of legal principles." Lee

v. Astrue, 2007 WL 1101281, at *1 (E.D. Pa. Apr. 12, 2007) (Katz, J.) (citing Krysztoforski v.

Chater, 55 F.3d 857, 858 (3d Cir. 1995)). Thus, I can overturn an ALJ's decision based on an

incorrect legal standard even if I find it supported by substantial evidence. Id. (citing Friedberg

v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if he is unable to engage in "any substantial gainful activity by

reason of any medically determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a continuous period of not less

than 12 months." 20 C.F.R. § 416.905. The claimant satisfies his burden by showing an inability

to return to his past relevant work. Rutherford, 399 F.3d at 551. Once this showing is made, the

burden shifts to the Commissioner to show the claimant, given his age, education, and work experience, has the ability to perform specific jobs existing in the economy.  20 C.F.R. § 416.920; see Rutherford, 399 F.3d at 551.

The ALJ may not make speculative inferences from medical evidence, see e.g., Smith v. Califano, 637 F.2d 968, 972 (3d Cir. 1981), but may reject conflicting medical evidence. Williams v. Sullivan, 970 F.2d 1178, 1187 (3d Cir. 1992).  When a conflict in the evidence exists, the ALJ may choose whom to credit, but "cannot reject evidence for no reason or for the wrong reason."  Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993) (quoting Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981)); accord Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). The ALJ must consider all the evidence and give some reason for discounting the evidence he rejects.  See Stewart v. Sec'y of HEW, 714 F.2d 287, 290 (3d Cir. 1983).

II.     The ALJ's Finding Saxton's Mental Impairments were Non-Severe was Not
        Supported by Substantial Evidence

The ALJ lacked substantial evidence to deem Saxton's mental impairments non-severe. An impairment is severe if it "significantly limits [the individual's] ability to do basic work activities."  20 C.F.R. §§  416.920(c).  Basic work activities are "the abilities and aptitudes necessary to do most jobs."  Id. §§  416.921(b).  A non-severe impairment is a "slight abnormality . . . which would have no more than a minimal effect on an individual's ability to work," irrespective of age, education, or work experience.  Bowen v. Yuckert, 482 U.S. 137, 154 n.12 (1987).  Thus, Saxton's burden is "not an exacting one."  McCrea, 370 F.3d at 360.

The inquiry at step two in the disability analysis is a "de minimis screening device to dispose of groundless claims," id., and reasonable doubts must be resolved in favor of the

claimant.  Id. (citing Newell, 347 F.3d 546-47).  Normally, only unsubstantiated or frivolous

claims are denied at this early stage.  See, e.g. Kerins v. Commissioner, 2006 WL 861236, at *3

(3d Cir. April 4, 2006) (schizophrenia claim deemed non-severe when claimant had no problems

with daily living or public interaction, worked as an armed police officer, and earned good grades

while taking 15 hours of college credits); Kirk v. Commissioner, 2006 WL 839026, at *2 n.3 (3d

Cir. March 31, 2006) (self-serving anxiety claim deemed non-severe when no medical reports

referenced such a condition); Ellis v. Barnhart, 2005 WL 428570, at *2 (E.D. Pa. Feb. 22, 2005)

(Reed, J.) (depression claim deemed non-severe based on single psychological evaluation, lack of

treatment, continuously unremarkable medical reports, and admission of claimant that symptoms

were controlled by medication).

     In determining whether substantial evidence supports the ALJ's finding a claimant failed

to satisfy the de minimis threshold, I must view the record in its entirety.  McCrea, 370 F.3d at

362.   The ALJ's opinion of the relative weight of each piece of evidence may be relevant at later

steps of the sequential analysis but "[does] not carry the day at step two."  Id.; see also Magwood

v. Commissioner, 2008 WL 4145443, at *2 (3rd. Cir. Sept. 9, 2008) (ALJ ignored McCrea's

instruction by weighing the medical evidence adduced by Magwood . . . against the consultative

examination of a psychologist and a consultative review of a psychiatrist).

     Saxton produced sufficient evidence his mental limitations were more than a "slight

abnormality," Bowen.  482 U.S. at 154 n.12, and had more than a minimal impact on his ability

to do basic work activities.  See McCrea, 370 F.3d at 361 (citing 20 C.F.R. § 416.920(c)).  Dr.

Karpf thoroughly examined Saxton and concluded Saxton suffered marked limitations in his

ability to understand, remember and carry out detailed instructions, and to respond appropriately

to work pressures in a usual work setting.  R. at 155.  Dr. Karpf also found Saxton's ability to

make judgments on simple work-related decisions moderately impaired.  Id.  In all other

categories, Dr. Karpf determined Saxton suffered slight impairments.  Id.

Dr. Karpf also administered several cognitive tests and concluded Saxton's IQ was "in

the borderline range."  R. at 153.  Additionally, Dr. Karpf determined Saxton had problems

concentrating on a task from beginning to end, could only sometimes carry out instructions, and

needed frequent rest periods to perform at a consistent pace.  R. at 154.  Despite concluding

Saxton's social and occupational limitations were due more to physical status than mental status,

Dr. Karpf diagnosed Saxton with marked and moderate mental impairments.  Id.

Although Saxton was uncooperative in revealing information about his prior psychiatric

history, Saxton cooperated when asked specific questions regarding the cognitive tests, and Dr.

Karpf rated Saxton's reliability and veracity as average.  R. at 150-152.  Furthermore, Dr. Karpf

concluded Saxton's lack of cooperation was due to his cognitive problems, and "historical

problems regarding his occupation."  R. at 152.

In addition, Saxton's three-year treatment history with Dr. Adlen supports Saxton's

claims of severe mental impairment.  Dr. Adlen consistently diagnosed Saxton with anxiety and

depression, R. at 185, 188-189, 191, 226, 228, 230, and prescribed Seroquel, an anti-psychotic

medication, R. at 186, 189, 191, 226.  Thus, his claim cannot be categorized as frivolous or

unsubstantiated.  See Kerins, 2006 WL 861236, at *3; Kirk, 2006 WL 839026, at *2 n.3.  Such

evidence could support a finding that Saxton's mental health issues significantly limits his ability

to perform basic work activities.

Nevertheless, the ALJ found Saxton's mental impairments non-severe, relying heavily on

10

Dr. Parshall's report in discrediting Dr. Karpf's diagnosis. R. at 20-21. Dr. Parshall found Dr.

Karpf overestimated the severity of Saxton's functional restrictions, and Saxton's mental

limitations were mild. R. at 169, 167. The ALJ found Dr. Parshall's assessment more consistent

with the record than Dr. Karpf's, identifying the scarcity of ongoing complaints of significant

mental health symptoms and Saxton's uncooperative demeanor, vague responses, and lack of

candor with Dr. Karpf as the reasons for crediting Dr. Parshall's assessment. R. at 20-21.

Additionally, the ALJ relied on Dr. Karpf's conclusion that Saxton's social and occupational

limitations were due more to physical status than mental status in finding Saxton's mental

impairments non-severe. R. at 20.

　　　　This evaluation of the relative weights of the evidence was improper at step two.

McCrea, 370 F.3d at 362; Magwood, 2008 WL 4145443, at *2. Conclusions about the relative

weight of the evidence may be relevant in later steps of the sequential analysis, but they do not

"carry the day" in assessing severity. McCrea, 370 F.3d at 362. At step two the ALJ must view

the record in its entirety and determine whether Saxton's mental impairments were "severe"

under the de minimis interpretation of the term, resolving all reasonable doubts in favor of the

claimant. Id.; Newell, 347 F.3d at 547. One passage of the ALJ's opinion illustrates this legal

error. In using Dr. Parshall's report to discredit Dr. Karpf's findings, the ALJ noted when Saxton

met with Dr. Karpf, Saxton "was less than forthcoming regarding his psychiatric history, and

admitted he was not taking anti-depressant medications or receiving any ongoing treatment." R.

at 20. Viewed in isolation, such evidence may prove significant, but it must be viewed in the

context of Saxton's overall history. Moreover, it is not surprising Saxton would minimize his

mental health history given his diagnosis of psychotic problems and his ongoing treatment

history with Dr. Adlen between 2004 and 2007.

Viewing the record in its entirety, including Dr. Karpf's thorough examination and Dr. Adlen's prescriptions for mental health medication and mental health diagnoses, the ALJ lacked substantial evidence to deem Saxton's mental impairments non-severe. Richardson, 402 U.S. at 401. Although Dr. Parshall's report casts doubt on the extent of Saxton's depression, Saxton presented sufficient evidence of severe mental impairments to meet his de minimis burden. McCrea, 370 F.3d at 362.

In arguing the ALJ appropriately found Saxton's depression non-severe, the Commissioner stated Saxton did not allege depression as an impairment when questioned by the ALJ. See Defendant's Response to Request for Review of Plaintiff at 6, Saxton v. Astrue, No. 08-3303 (E.D. Pa. filed Nov. 17, 2008) [hereinafter Defendant's Brief]. The government relied on Rutherford, where the court held an ALJ's failure to mention a claimant's obesity did not require remand where the claimant had failed to allege obesity as an impairment. 399 F.3d at 553-4. Here, unlike Rutherford, the ALJ devoted three pages of her opinion to the severity of Saxton's mental limitations. R. at 19-21. Regardless, Saxton's failure to extensively discuss his mental illness during the hearing is not dispositive. Although Saxton did not specifically discuss depression during the hearing, Saxton said he was taking Seroquel, an anti-psychotic medication, and was treated at Penn Mental Health in 2003. R. at 41. Saxton also listed depression as a limitation in his application for SSI benefits, R. at 97, 100, 112, and his medical record with Dr. Adlen features a discussion of the issue. R. at 188-189, 191, 226, 228, 230.

IV.    Saxton's Additional Claims

Saxton also alleged the ALJ failed to support Saxton's RFC with substantial evidence,

and the ALJ should have included Saxton's manipulative and mental limitations in the

hypothetical questions posed to the vocational expert.  <u>See</u> Plaintiff's Brief at 3-5, 8-11.

Because I recommend Saxton's case be remanded for the ALJ's failure to support finding

Saxton's mental limitations non-severe with substantial evidence, it is unnecessary to examine

Saxton's additional claims.  A remand may produce different results on these claims, making

discussion of them moot.  <u>See</u> <u>Steininger v. Barnhart</u>, 2005 WL 2077375, at *4 (E.D. Pa. Aug.

24, 2005) (Baylson, J.) (not addressing additional arguments because ALJ may revise his

findings after remand).  For example, inclusion of mental health limitations could impact

Saxton's RFC and a vocational expert's opinion of the type of work he may be able to perform.

Accordingly, I make the following:

## R E C O M M E N D A T I O N

AND NOW, this 3rd day of April, 2009, it is respectfully recommended that Saxton's request for review be GRANTED and the matter be REMANDED to the Commissioner for further review consistent with this report and recommendation.  The Commissioner may file objections to this Report and Recommendation within 10 days after being served with a copy thereof.  See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:


 \s\ TIMOTHY R. RICE
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

14